UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| **RXEED, LLC.** | ) | CASE NO. 2:24-cv-01111 |
| | ) | |
| Plaintiff | ) | |
| V. | ) | |
| | ) | |
| **CAREMARK, LLC** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## COMPLAINT

Plaintiff Rxeed, LLC ("Plaintiff Rxeed"), by counsel, respectfully files this action for damages and declaratory judgment against Defendant Caremark, LLC ("Defendant Caremark"), a Pharmacy Benefits Manager company, to enjoin Defendant Caremark from violating Section 582 of the Federal Drug Supply Chain Security Act ("DSCSA") (21 U.S.C. 360eee-1(d)(1)(A)(ii)), for tortious interference with prospective business advantage, for violating New Jersey Antitrust Act (N.J. Stat. 56:9-3 and 56:9-10), and for unfair competition under New Jersey common law. Plaintiff seeks injunctive relief, consequential, compensatory, and punitive damages arising out of same violations.  For its complaint, Plaintiff Rxeed alleges the following.

### I.   JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and over the State claims pursuant to 28 U.S.C. §1367.

2. Venue is proper pursuant to 28 U.S.C.§1391 because events supporting Plaintiff's claims occurred throughout the District of New Jersey, and throughout the United States.

## II.  THE PARTIES

3. Plaintiff Rxeed, LLC ("Plaintiff Rxeed") is an Illinois company that operates an online marketplace for pharmacies to buy and sell prescription drugs in a safe and controlled manner - all in compliance with Section 586 of the Federal Drug Supply Chain Security Act (DSCSA).

4. Defendant Caremark, LLC ("Defendant Caremark") is an Arizona based limited liability company and operates as a Pharmacy Benefits Manager throughout the United States, including the State of New Jersey. Defendant Caremark may be served by serving with service process upon its resident agent.

## III.  PLAINTIFF'S STANDING TO SUE UNDER SECTION 586 OF THE DSCSA

5. Defendant Caremark acts as a prescription drug manager on behalf of the State of New Jersey's Medicaid program, and the United States Federal Medicare Part D program. Accordingly, Defendant Caremark is a state actor for purposes of Plaintiff's right to sue Defendant for violation of Section 582 of the DSCSA (21 U.S.C. 360eee-1(d)(1)(A)(ii)), pursuant to 42 U.S.C. §1983.

## IV.  STATEMENT OF CLAIM

**Plaintiff Rxeed's Online drug purchase matching Service.**

6. In April 2018, Plaintiff Rxeed was established in the State of Illinois to operate an online pharmacy drug-matching service marketplace ("marketplace") where retail pharmacies that desire to purchase and sell specific prescription drugs for specific patient needs are matched to complete the transaction in accordance with 582(d)(1)(A)(ii) of the DSCSA.

**The Federal Drug Supply Chain Security Act (DSCSA)**

7. The Federal Drug Supply Chain Act (DSCSA) was enacted by Congress to protect consumers from exposure to drugs that may be counterfeit, stolen, contaminated, or otherwise harmful. Therefore, pharmacies are required by numerous insurance and Pharmacy Benefits Managers such as Defendant Caremark to ensure that their inventories meet the requirements of the DSCA of well documented drug acquisition.

8. Specifically, Section 582(d)(1)(A)(ii) of the DSCSA provides that "a dispenser prior to, or at the time of, each transaction in which the dispenser transfers ownership of a product (but not including dispensing to a patient or returns) shall provide the subsequent owner with transaction history, transaction information, and a transaction statement for the product."

**The DSCSA Exception: Retail Pharmacy to Retail Pharmacy Transactions**

9. However, there is an exception in the last sentence of Section 582(d)(1)(A)(ii), which states ***the requirements of this clause <u>shall not apply</u> to sales by a dispenser to another dispenser to fulfill a specific patient need***." (Emphasis Supplied).

10. The term "dispenser" refers to retail pharmacies. The DSCSA defines "***specific patient need***" as the transfer of a product from one pharmacy to another to fill a prescription for an identified patient. Section 581(19) defines that term to include "***the transfer of a product from one pharmacy to another for the purpose of increasing or replenishing stock in anticipation of a potential need***." *Emphasis Supplied.*

11. In fact, Defendant Caremark's very own Manual acknowledges the need to comply with the DSCSA. The Manual, pursuant to Paragraph 8.05.01 Invoice Documents and Records Maintenance states as follows:

> 8.05.01 Invoice Documents and Records Maintenance
> Provider must maintain any Transaction Statement, Transaction History, and Transaction Information provided to Provider pursuant to the DSCSA and any regulations promulgated under the DSCSA for the period required by applicable Law and any Documentation during the term of the Agreement and for two (2) years after the termination of the Agreement.

**Rxeed's Online Matching Service Complies with the DSCSA**

12. Rxeed ensures that specific prescription drugs bought and sold between pharmacies for specific patient needs is properly accounted for and meets the requirements of Section 582 of the DSCSA.

13. This invaluable service enables pharmacies to quickly obtain critically needed prescription drugs for their patients in the event of drug shortages. It is why Congress made this exception clear in Section 582 of the DSCSA. See 21 U.S.C. 360eee-1(d)(1)(A)(ii).

14. Plaintiff Rxeed counts over 1323 retail pharmacies throughout the United States as its customers and has prospective customers of over one thousand other pharmacies that are currently not using Rxeed's services because of Defendant Caremark's unlawful violation of the DSCSA.

**Plaintiff's Customers**

15. In a typical transaction, Rxeed matches a seller-pharmacy desiring to sell a prescription drug from its inventory to a buyer-pharmacy that needs a specific drug for a specific patient's needs, as permitted under Section 582 of the DSCSA.

16. This permits the Buyer-Pharmacy to locate specific prescription drugs for a patient through Rxeed's exceptional ability to match retail Pharmacy-buyers and Pharmacy-sellers when the drug is not readily available from a wholesaler, or when the drug cannot be obtained from a drug wholesaler or manufacturer in the marketplace – again all in compliance with Section 582 of the DSCSA.

17. To date, prescription drug shortages remain a serious problem, especially because of supply-chain disruptions that occurred post Covid epidemic, and other reasons.

18. Therefore, providing patients with critically needed prescription drugs is vital to every retail pharmacy's operation.

19. It is precisely why Congress carved an express exception in Section 582 of the DSCSA for pharmacies purchasing specific prescriptions for specific patient needs through Rxeed.

**Defendant Caremark**

20. Defendant Caremark is an Arizona based limited liability company that acts as a Pharmacy Benefits Manager – commonly referred to in the pharmacy industry as **PBM**.

21. As a PBM, Caremark manages various federal and state health care plans, including the processing of claims for prescription drugs submitted by retail pharmacies on behalf of patients insured under federal and state healthcare programs (Medicare and Medicaid).

22. Any prescription drug claim must meet two requirements: 1) The drug must be listed on the PBM's drug formulary or list, and 2) the retail pharmacy must prove in an audit that the drug was properly purchased.

23. **Therefore, Defendant Caremark exerts tremendous power over retail pharmacies by deciding what claims can be processed for a specific prescription drug, and what constitutes proper evidence of purchase history of the drug.**

24. Thus, if Caremark decides that a drug is not covered, a Pharmacy is virtually unable to provide that drug to its customers because over 98% of customers obtain their prescription drugs through their healthcare insurance coverage.

25. Similarly, if Caremark decides that a member pharmacy's purchase history is unacceptable it can virtually destroy a Pharmacy's operations within days or weeks. It is precisely this type of

leverage that Caremark uses in its audits of pharmacies to force them to not purchase prescriptions though Plaintiff's online marketplace.

**Defendant Caremark's Incentive to Violate the DSCSA**

26. Defendant Caremark is a subsidiary of CVS Corporation (CVS), a multibillion-dollar pharmacy chain company in the United States. Therefore, every retail pharmacy that is a member of Caremark's insurance network is a competitor of CVS's retail pharmacy stores throughout the United States.

27. As a wholly owned subsidiary of CVS, Caremark has every incentive to reduce the competition CVS faces from other retail pharmacies by terminating competing retail pharmacies from Caremark's insurance network.

28. In other words, Caremark can easily terminate a pharmacy's network contract, engage in expensive and very abusive audit practices, including the recoupment of hundreds of thousands of dollars by refusing to accept the purchase history of pharmacies that purchased certain medications through Plaintiff's online matching service under Section 582 of the DSCSA.

29. Accordingly, CVS and Defendant Caremark conspire and contract with one another to reduce competition by terminating retail pharmacies from Caremark's network that do business with Plaintiff.

**Defendant Caremark's Provider Manual**

30. Caremark issues a "Provider Manual" to each retail pharmacy that is a member of its network. The Provider Manual is the contract terms between Defendant Caremark and its retail pharmacy members.

31. Section 2.01.01 of the Manual provides:

    a. "All Providers must comply **with all applicable Laws and provide all Pharmacy Services** and Covered Items in a professional manner and in compliance with the highest industry practice standards. Failure to comply may result in remedial action by Caremark including, but not limited to, Provider Agreement termination. See *Provider Manual, ¶2.01.01* **Exhibit 1**

32. By its own language, one of the applicable laws that retail pharmacies, Caremark, and Rxeed must comply with is the DSCSA, including Section 582(d)(1)(A)(ii). Defendant Caremark is not permitted to arbitrarily override federal or state law to suit its needs, especially when Caremark is considered a state actor, *i.e,* the manager of the prescription drug benefits for the New Jersey Medicaid Program and Part D of the Federal Medicare Program.

**Defendant Caremark's Abusive & Unlawful Audit Practices**

33. Defendant Caremark audits all its retail pharmacy members from time to time. Among the growing burdensome and bad faith requirements that Caremark continually imposes on retail pharmacies is the requirement for a retail pharmacy to prove that it purchased the prescription drugs it dispenses by producing a "purchase history" of medications the retail pharmacy bought and dispensed to its patient customers.

34. However, Defendant Caremark began an unlawful scheme of rejecting any purchase histories of medications purchased by retail pharmacies that used Rxeed's matching services between retail pharmacies, despite the DSCSA's express permission for such purchases.

35. In fact, Defendant Caremark has suddenly decided not to accept the purchase histories provided by Plaintiff Rxeed to its customers in compliance with Section 582 of the DSCSA.

36. Thus, for example, if a Buyer-Pharmacy purchases $1,000 worth of prescription drugs from another pharmacy using Rxeed's matching service, Caremark has decided not to accept the

purchase history that Rxeed provides to its retail pharmacy customers as evidence of the drug purchase, in express violation of Section 582(d)(1)(A)(ii) of the DSCSA.

37. In fact, Defendant Caremark unilaterally decided not to permit network member pharmacies from purchasing needed inventory through Plaintiff Rxeed's drug matching service in an unlawful effort to:

   a. claw back tens of millions of dollars in recoupments from many of Rxeed's retail pharmacy customers, and
   b. to terminate the pharmacies from its insurance network.

38. Caremark has every incentive to remove retail pharmacies from its networks because these same pharmacies are competitors to Caremark's parent company CVS, a multi-billion-dollar company with thousands of retail pharmacies throughout the United States.

**Rxeed's online Marketplace**

39. Between April 2018 to date, Plaintiff invested substantial capital to develop and maintain its online marketplace for its retail pharmacy customers.

40. In fact, thousands of retail pharmacies throughout the United States rely heavily on Plaintiff Rxeed's marketplace service to facilitate the acquisition of specific-need prescription drugs for their customers.

41. For example, on or about March 21, 2022, Downtown Pharmacy, a customer of Plaintiff, informed Rxeed that Caremark refused to accept Rxeed's purchase history, even though Rxeed provided Caremark with copies of all documents, checks, etc. showing how Downtown Pharmacy acquired its prescription drugs in compliance with the DSCSA.

42. Dozens of other retail pharmacies advised Rxeed that Defendant Caremark suddenly and without notice refused to accept their purchase histories for medications acquired from other

retail pharmacies through Rxeed, **even though those same pharmacies have long purchased part of their inventories through Rxeed without any objection by Caremark.**

**Caremark's Violation of the DSCSA**

43. On or about May 6, 2022, Caremark without notice decided that any inventory purchase history for inventory acquired by a retail pharmacy through Rxeed will not be accepted from retail pharmacies purchasing prescription drugs for specific patient needs.

44. In violation of the DSCSA, Caremark began clawing back millions of dollars from retail pharmacies based on Caremark's unilateral and self-serving interpretation of the DSCSA. Again, Caremark is bound under its so-called Provider Manual with retail pharmacies to comply with any federal healthcare law and regulation, including the DSCA.

45. As a result, Plaintiff began to lose dozens of retail pharmacy customers in New Jersey and other states because of Caremark's violation of the DSCSA.

46. These pharmacies suffered serious financial harm by being unable to dispense needed medications for their customers, and being forced having to return millions of dollars in reimbursements back to Caremark for inventory that was properly purchased through Rxeed.

47. Caremark began a concerted effort to destroy Rxeed's business by specifically maligning Rxeed as an unlawful inventory matching service.

48. Defendant Caremark instructed retail pharmacies not to use Rxeed's service to lawfully obtain prescriptions for patients-in-need under threats of network termination, and recoupment of millions in reimbursements. This caused numerous other pharmacies to fear using Rxeed's online marketplace for fear of being terminated from Caremark's valuable insurance network.

49. Numerous pharmacies have refused to use Rxeed's service after Caremark began its unlawful violation of the DSCSA, causing Rxeed serious economic injury.

**Caremark's Antitrust & Unfair Competition Acts**

50. Every retail pharmacy that Rxeed counts as customer was threatened with termination, abusive audit practices, unlawful recoupment of hundreds of thousands of dollars under false accusations of not providing proper purchase histories.

51. Caremark as a wholly owned subsidiary of CVS Corporation has every incentive to destroy Rxeed's customers by falsely and unfairly claiming that any prescription purchased from other pharmacies through Rxeed's online marketplace fails to meet Caremark's Manual terms.

52. For example, Rxeed sought to terminate Downtown Pharmacy of Jersey City, NJ, which has two retail stores within less than a mile of CVS pharmacy stores.

53. Caremark sought to terminate Healthsource Pharmacy of New York, NY – a Rxeed customer - which operates three (3) retail stores all within less than half a mile of a CVS competing pharmacy.

54. By way of another example, In Las Vegas, Nevada, Caremark sought to terminate Greenbay Specialty Pharmacy (another Rxeed customer) for using Rxeed's services. Greenbay operates its retail pharmacy store less than a third (.3) of a mile from a competing CVS pharmacy.

55. There are numerous other pharmacies to list that have been targeted for termination, audit practices, and unlawful recoupments because of their use of Rxeed's services.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE DRUG SUPPLY CHAIN SECURITY ACT
**Section** 582(d)(1)(A)(ii) of the DSCSA
21 U.S.C. 360eee-1(d)(1)(A)(ii)

56. Rxeed repeats, re-alleges, and incorporates by reference the allegations of paragraphs 1-55. above paragraphs are reincorporated herein.

57. Caremark is required by law to comply with the various federal, state, and local healthcare laws and regulations, including the DSCSA as expressly provided for in Caremark's own manual.

58. Caremark is a state actor pursuant to 42 U.S.C. §1983 because it is designated by the State of New Jersey and the United States to manage New Jersey's Medicaid prescription benefits program, and to manage Part D of the Federal Medicare Program.

59. Section 582 of the DSCSA (21 U.S.C. 360eee-1(d)(1)(A)(ii)), specifically permits Rxeed's retail pharmacy customers to obtain needed drugs for designated patients.

60. Plaintiff Rxeed complies with the DSCSA requirements by matching retail pharmacies who wish to buy and sell specific prescription drugs to meet specific patient drug requirements.

61. Caremark's unlawful interpretation of the DSCSA (through its refusal to accept a retail pharmacy's drug purchase history from Rxeed) is designed to destroy retail pharmacies to remove competition for the benefit of its owner CVS Corporation (which also operates a multi-billion-dollar pharmacy chain throughout the United States).

62. Caremark's violation of the DSCSA also permits Caremark to unlawfully claw back hundreds of millions of dollars from retail pharmacies under the pretext that their drug purchase history from Plaintiff is unacceptable.

63. Accordingly, Caremark violated the DSCSA and must be enjoined from forcing retail pharmacies not to use Plaintiff Rxeed's online matching service.

## SECOND CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

64. Rxeed repeats, re-alleges, and incorporates by reference the allegations of paragraphs 1-63.

65. Plaintiff has reasonable expectation of advantage from a prospective contractual or economic relationship with its current and hundreds of other retail pharmacies in New Jersey and throughout the United States.

66. Defendant Caremark interfered with this advantage intentionally and with malice by specifically instructing all pharmacies not to deal or contract with Plaintiff for their specific prescription drug needs.

67. Defendant's malicious interference caused Plaintiff Rxeed serious financial losses of the expected advantages that Plaintiff could have derived from its prospective contractual relationship with other Pharmacies causing Plaintiff serious economic damage.

## THIRD CAUSE OF ACTION
## NEW JERSEY ANTITRUST ACT
**(N.J. Stat. 56:9-3 and 56:9-10)**

68. Rxeed repeats, re-alleges, and incorporates by reference the allegations of paragraphs 1-67.

69. The relevant market is providing retail pharmacies with an online prescription purchasing service.

70. This claim arises under the New Jersey Antitrust Act, N.J. Stat. Ann. §56:9 *et seq.*, ("NJ Antitrust Act") and seeks a judgment that Caremark has violated the NJ Antitrust Act.

71. Caremark's anticompetitive and exclusionary conduct has directly and proximately caused injury to Rxeed's business and retail pharmacy customers as set forth above. This is precisely the type of injury the antitrust laws are intended to prohibit and thus constitutes antitrust injury.

## FOURTH COUNT

### Common Law of the State of New Jersey – Unfair Competition

72. Rxeed repeats, re-alleges, and incorporates by reference the allegations of paragraphs 1-71.

73. Through Caremark's unlawful, predatory and anticompetitive acts, Caremark has engaged in unfair competition and unfair trade practices in violation of the common law of the State of New Jersey.

74. Defendant Caremark engaged in unfair methods of competition by leveraging its powers over Plaintiff's retail pharmacy customers.

75. Specifically, Caremark threatened each of Plaintiff's customers with network termination and devastating claw backs for using Rxeed to purchase needed prescription drugs from other retail pharmacies.

76. Defendant Caremark uses its power as manager of healthcare insurance providers to maliciously direct retail pharmacies away from Plaintiff Rxeed and to CVS's pharmacy stores.

77. Defendant Caremark engaged in a concerted effort to intimidate and coerce retail pharmacies into not contracting with Rxeed to obtain prescription drugs for their patient customers.

78. As a result of the foregoing, Caremark has injured Rxeed in its business, and Rxeed is entitled to damages, attorneys' fees, costs of suit, and other appropriate relief.

## JURY DEMAND

79. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Caremark demands a trial by jury as to all issues.

## VI.     RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests judgment enjoining Defendant Caremark from violating the DSCSA by permitting Plaintiff's customers to purchase and sell prescription drug medications on specific patient need basis from its online marketplace. Plaintiff further requests damages in an amount exceeding $2 million dollars which reflects the revenue Plaintiff has lost since December 1, 2023 because of Caremark's violation of New Jersey's Antitrust Act, and Unfair Competition laws.  Further, Plaintiff requests attorneys' fees and court costs, and any other relief that court deems just and proper.

Date: February 26, 2024

                              Respectfully Submitted,

                              DEWOOD, P.C.

By:     */s/ Nizar DeWood*
        Nizar A. DeWood, Esq.
        4200 Montrose Blvd. Suite 540
        Houston, Texas 77006
        T. (713) 492-2274 | F. (888) 398-8428
        *nizar@dewood-law.com*
        ATTORNEYS FOR PLAINTIFF
        RXEED