UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| **RXEED, LLC.** | ) | CASE NO. 2:24-cv-01111 |
| Plaintiff | ) | |
| V. | ) | |
| **CAREMARK, LLC** | ) | |
| Defendant | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Rxeed, LLC ("Plaintiff Rxeed"), by counsel, respectfully files this action for damages, injunctive relief, and declaratory judgment against Defendant Caremark, LLC ("Defendant Caremark"), a Pharmacy Benefits Manager (PBM) company, to enjoin Defendant Caremark from violating Section 582 of the Federal Drug Supply Chain Security Act ("DSCSA") (21 U.S.C. 360eee-1(d)(1)(A)(ii)), for Tortious Interference with Prospective Business Advantage, for violating the New Jersey Antitrust Act (N.J. Stat. 56:9-3 and 56:9-10), and for Unfair Competition under New Jersey common law.

Plaintiff seeks injunctive relief, consequential, compensatory, and punitive damages arising out of same violations. Accordingly, for its complaint, Plaintiff Rxeed alleges the following.

### I.   JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over the federal claim pursuant to 28 U.S.C. §1331 and over the State claims pursuant to 28 U.S.C. §1367.

2. Venue is proper pursuant to 28 U.S.C.§1391 because events supporting Plaintiff's claims occurred throughout the District of New Jersey, and throughout the United States.

## II.   THE PARTIES

3. Plaintiff Rxeed, LLC ("Plaintiff Rxeed") is an Illinois company that operates an online marketplace for retail pharmacies to buy and sell prescription drugs in a safe and controlled online environment - all in compliance with Section 586 of the Federal Drug Supply Chain Security Act (DSCSA).

4. Defendant Caremark, LLC ("Defendant Caremark") is an Arizona based limited liability company and operates as a Pharmacy Benefits Manager (PBM) throughout the United States, including the State of New Jersey. Defendant Caremark may be served with process upon its resident agent.

## III.   PLAINTIFF'S STANDING TO SUE UNDER SECTION 586 OF THE DSCSA

5. Defendant Caremark acts as a prescription drug manager on behalf of the State of New Jersey's Medicaid program, and the United States Federal Medicare Part D program. Accordingly, Defendant Caremark is a state actor for purposes of Plaintiff's right to sue Defendant for violating Section 582 of the DSCSA (21 U.S.C. 360eee-1(d)(1)(A)(ii)), pursuant to 42 U.S.C. §1983.

## IV.   STATEMENT OF CLAIM

**Plaintiff Rxeed's Online drug purchase matching Service.**

6. In April 2018, Plaintiff Rxeed was established in the State of Illinois to operate an online pharmacy drug-matching service marketplace ("marketplace") where retail pharmacies that desire to purchase and sell specific prescription drugs for specific patient needs are matched with one another to complete the transaction in accordance with 582(d)(1)(A)(ii) of the DSCSA.

7. Between April 2018 to date, Plaintiff invested substantial capital to develop and maintain its online marketplace for its retail pharmacy customers.

**The Federal Drug Supply Chain Security Act (DSCSA)**

8. The Federal Drug Supply Chain Security Act (DSCSA) was enacted by Congress to protect consumers from exposure to drugs that may be counterfeit, stolen, contaminated, or otherwise harmful. Therefore, pharmacies are required by numerous insurance companies and PBMs such as Defendant Caremark to ensure that their inventories meet the DSCSA's drug purchase history documentation requirements.

9. Section 582(d)(1)(A)(ii) of the DSCSA provides that "a dispenser prior to, or at the time of, each transaction in which the dispenser transfers ownership of a product (but not including dispensing to a patient or returns) shall provide the subsequent owner with **transaction history**, transaction information, and a transaction statement for the product."

**The DSCSA's "Transaction History" Exception: Pharmacy to Pharmacy Transactions**

10. However, there is an exception as shown in the last sentence of Section 582(d)(1)(A)(ii), which states *the requirements of this clause* <u>*shall not apply*</u> *to sales by a dispenser to another dispenser to fulfill a specific patient need.*" (Emphasis Supplied). Thus, there is no transaction history requirement for retail pharmacy-to-retail pharmacy drug acquisitions under the DSCSA.

11. The term "dispenser" refers to retail pharmacies. The DSCSA defines "*specific patient need*" as the transfer of a product from one pharmacy to another to fill a prescription for an identified patient. Section 581(19) defines that term to **not** include "*the transfer of a product from one*

*pharmacy to another for the purpose of increasing or replenishing stock in anticipation of a potential need.*" *Emphasis Supplied.*

12. In fact, Defendant Caremark's very own Provider Manual ("Manual") acknowledges the need to comply with the DSCSA. The Manual, pursuant to Paragraph 8.05.01 Invoice Documents and Records Maintenance states as follows:

> 8.05.01 Invoice Documents and Records Maintenance
> Provider must maintain any Transaction Statement, Transaction History, and Transaction Information provided to Provider **pursuant to the DSCSA** and **any regulations promulgated under the DSCSA** for the period required by applicable Law and any Documentation during the term of the Agreement and for two (2) years after the termination of the Agreement.

*Provider Manual* ¶8.05.01 (Emphasis Supplied).

**Rxeed's Online Matching Service Complies with the DSCSA**

13. Thus, in accordance with the DSCSA, Plaintiff Rxeed ensures that specific prescription drugs purchased and sold between retail pharmacies for specific patient need is properly accounted for and meets the documentation requirements of Section 582 of the DSCSA.

14. This invaluable service enables pharmacies to quickly obtain critically needed prescription drugs for their patients in the event of drug shortages. It is why Congress made this **exception** clear in Section 582 of the DSCSA. See 21 U.S.C. 360eee-1(d)(1)(A)(ii).

15. Plaintiff Rxeed counts over 1323 retail pharmacies throughout the United States as customers and has prospective customers of over one thousand other retail pharmacies that are currently not using Rxeed's services because of Defendant Caremark's unlawful violation of the DSCSA, and threat to terminate retail pharmacies should they use Rxeed's services.

**Plaintiff Rxeed's DSCSA Compliant Transactions**

16. In a typical transaction, Plaintiff Rxeed matches a seller-pharmacy desiring to sell a prescription drug from its inventory to a buyer-pharmacy that needs that specific drug for a specific patient's need, as permitted under Section 582 of the DSCSA.

17. This permits the Buyer-Pharmacy to locate specific prescription drugs for a patient through Rxeed's exceptional ability to match nationwide retail Pharmacy-buyers with retail Pharmacy-sellers when the drug is not readily available from a drug wholesaler or manufacturer in the marketplace – again all in compliance with Section 582 of the DSCSA.

18. To date, prescription drug shortages remain a serious problem because of Covid supply chain related issues, and other shortages reasons. Therefore, providing patients with critically needed prescription drugs is vital to every retail pharmacy's operation.

19. It is precisely why Congress carved out an express exception in Section 582 of the DSCSA for retail pharmacies purchasing specific prescriptions for specific patient needs through Rxeed.

**Defendant Caremark**

20. Defendant Caremark is an Arizona based limited liability company that acts as a Pharmacy Benefits Manager – commonly referred to in the pharmacy industry as **PBM**.

21. As a PBM, Caremark manages various federal and state health care plans, including the processing of claims for prescription drugs submitted by retail pharmacies on behalf of patients insured under federal and state healthcare programs (Medicare and Medicaid).

22. Any prescription drug claim submitted to Caremark must meet two requirements: 1) The drug must be listed on Defendant Caremark's drug formulary or list, and 2) the retail pharmacy must maintain proper purchase history to document the acquisition of the drug.

23. Therefore, Defendant Caremark exerts tremendous power over retail pharmacies by deciding what claims can be processed for specific prescription drugs, and what constitutes **proper drug purchase history**.

**Defendant Caremark Forces Retail Pharmacies Not to Transact with Plaintiff Rxeed**

24. Defendant Caremark's market leverage over retail pharmacies is undisputed. If for example, Caremark decides that a drug is not covered, a Pharmacy is virtually unable to provide that drug to its customers because over 98% of customers obtain their prescription drugs through their healthcare insurance plans. Many of these healthcare plans including Medicare and Medicaid are managed by Caremark.

25. Similarly, if Caremark decides that a member pharmacy's purchase history is unacceptable it can virtually destroy a Pharmacy's operations within days or weeks by terminating the retail pharmacy from its network, or by forcibly recouping the entire cost of the drug, and/or suspending all future reimbursements to the Pharmacy.

26. Defendant Caremark now uses this type of leverage in its audits of pharmacies to force them not to purchase prescriptions though Plaintiff's online marketplace, causing Plaintiff serious financial damages.

**Defendant Caremark's Incentive to Violate the DSCSA**

27. Defendant Caremark is a subsidiary of CVS Corporation (CVS), a multibillion-dollar pharmacy chain company in the United States. Therefore, every retail pharmacy that is a member of Caremark's insurance network is by default a direct competitor to CVS's retail pharmacy stores throughout the United States.

28. As a wholly owned subsidiary of CVS, Caremark has every incentive to reduce the competition CVS faces from other retail pharmacies by terminating competing retail pharmacies from Caremark's insurance network. Certainly, Caremark would not terminate any CVS retail pharmacy store, and upon information has never terminated a CVS retail pharmacy store from its network.

29. Thus, Caremark can easily terminate a competing retail pharmacy (that transacts with Plaintiff Rxeed) from its network and impose expensive and abusive audit practices - including the forcible recoupment of hundreds of thousands of dollars under the pretext of declaring invalid the purchase histories obtained from Plaintiff Rxeed.

30. Accordingly, CVS and Defendant Caremark conspired and contracted with one another to reduce competition by terminating retail pharmacies from Caremark's network that do business with Plaintiff Rxeed.

**Defendant Caremark's Provider Manual**

31. Defendant Caremark issues a "Provider Manual" to each retail pharmacy that is a member of its network. The Provider Manual is the contract terms between Defendant Caremark and its retail pharmacy members.

32. Section 2.01.01 of the Manual provides:

    a. "All Providers must comply **with all applicable Laws and provide all Pharmacy Services** and Covered Items in a professional manner and in compliance with the highest industry practice standards. Failure to comply may result in remedial action by Caremark including, but not limited to, Provider Agreement termination. See *Provider Manual,* ¶2.01.01.

33. By its own language, one of the applicable laws that Plaintiff Rxeed, retail pharmacies, and Caremark must comply with is the DSCSA, including Section 582(d)(1)(A)(ii).

34. Defendant Caremark is not permitted to arbitrarily override federal or state law to suit its needs, especially when Caremark is considered a state actor, *i.e,* the manager of the prescription drug benefits for the New Jersey Medicaid Program and Part D of the Federal Medicare Program.

**Defendant Caremark's Abusive & Unlawful Audit Practices**

35. Defendant Caremark audits all its retail pharmacy members from time to time. Among the growing burdensome and requirements that Caremark continually imposes on retail pharmacies is the requirement that retail pharmacies produce "purchase histories" of medications bought and dispensed to their patient customers.

36. However, what constitutes proper "purchase histories" is something that Defendant Caremark began to change in bad faith, without notice, and in a manner inconsistent with Caremark's prior audit practices of its retail pharmacy network members.

37. In fact, Defendant Caremark has suddenly decided not to accept the purchase histories provided by Plaintiff Rxeed to its customers in compliance with Section 582 of the DSCSA.

38. Thus, for example, if a Buyer-Pharmacy purchases $1,000 worth of prescription drugs from another pharmacy using Rxeed's matching service, Caremark now refuses to accept the purchase history that Rxeed provides to its retail pharmacy customers as evidence of the drug purchase, in direct violation of Section 582(d)(1)(A)(ii) of the DSCSA.

39. To the point, Defendant Caremark expressly instructed member pharmacies not to purchase needed prescription drugs through Plaintiff Rxeed's drug matching service in an unlawful effort to:

    a. claw back tens of millions of dollars in unlawful recoupments from many of Rxeed's retail pharmacy customers, and

    b. to terminate the pharmacies from its insurance network.

40. In so doing, Caremark not only prevented retail pharmacies from transacting with Plaintiff Rxeed, but it also demonstrates Caremark's incentive to remove retail pharmacies from its insurance network because these same pharmacies are competitors to Caremark's parent company CVS, a multi-billion-dollar company with thousands of retail pharmacies throughout the United States.

41. On numerous occasions, Rxeed's pharmacy customers informed Rxeed that Caremark refused to accept Plaintiff Rxeed's purchase history, even though Rxeed provided Caremark with copies of all documents, checks, etc. showing how Plaintiff Rxeed's customers acquired their specifically designated prescription drugs in compliance with the DSCSA.

42. Dozens of retail pharmacies advised Plaintiff Rxeed that Defendant Caremark suddenly and without notice refused to accept their purchase histories for medications acquired from other retail pharmacies through Rxeed, even though those same pharmacies have long purchased part of their inventories through Rxeed **without any objection by Caremark.**

**Caremark's Violation of the DSCSA**

43. On or about May 6, 2022, Caremark without notice decided that any Rxeed prescription purchase history would not be accepted as proper drug purchase history.

44. In violation of the DSCSA, Caremark began clawing back millions of dollars from retail pharmacies based on Caremark's unilateral and self-serving interpretation of the DSCSA's purchase history requirements. Again, Caremark is bound under its Provider Manual with retail pharmacies to comply with any federal healthcare law and regulation, including the DSCSA.

45. As a result, Plaintiff began to lose dozens of retail pharmacy customers in New Jersey and other states because of Caremark's violation of the DSCSA.

46. These pharmacies suffered serious financial harm by being unable to dispense needed medications for their customers, and by being forced to return millions of dollars in reimbursements back to Caremark for inventory that was properly purchased through Rxeed.

47. Caremark began a concerted effort to destroy Rxeed's business. Specifically, Defendant Caremark instructed retail pharmacies not to transact with Plaintiff Rxeed under threats of network termination and recoupment of millions in reimbursements. This caused numerous pharmacies to stop using Rxeed's online marketplace for fear of being terminated from Caremark's valuable insurance network.

48. Numerous pharmacies have refused to use Rxeed's service after Caremark began its unlawful violation of the DSCSA, causing Rxeed serious economic injury.

**Caremark's Antitrust & Unfair Competition Acts**

49. Almost every retail pharmacy that Rxeed counts as customer was threatened with termination, abusive audit practices, and unlawful recoupment of hundreds of thousands of dollars under the false pretext that the pharmacies did not provide proper purchase histories.

50. Caremark as a wholly owned subsidiary of CVS Corporation has every incentive to destroy Rxeed's customers by falsely and unfairly claiming that any drugs purchased from other pharmacies through Rxeed's online marketplace fails to meet Caremark's Manual terms, even though the DSCSA permits these transactions.

51. In numerous instances, Caremark sought to terminate Rxeed customers that operate retail stores all within less than half a mile of a CVS competing pharmacy.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE DRUG SUPPLY CHAIN SECURITY ACT
**Section** 582(d)(1)(A)(ii) of the DSCSA
21 U.S.C. 360eee-1(d)(1)(A)(ii)

52. Plaintiff Rxeed re-alleges and incorporates by reference the allegations of paragraphs 1-51 above.

53. Caremark is required by law to comply with various federal, state, and local healthcare laws and regulations, including the DSCSA as expressly provided for in Caremark's Provider Manual.

54. Caremark is a state actor pursuant to 42 U.S.C. §1983 because it is designated by the State of New Jersey and the United States to manage New Jersey's Medicaid prescription benefits program, and to manage Part D of the Federal Medicare Program.

55. Section 582 of the DSCSA (21 U.S.C. 360eee-1(d)(1)(A)(ii)), specifically permits Rxeed's retail pharmacy customers to obtain drugs needed for designated patients.

56. Plaintiff Rxeed complies with all DSCSA requirements by matching and providing retail pharmacies who wish to buy and sell specific prescription drugs needed for specific patients with proper purchase histories.

57. Caremark's unlawful interpretation of the DSCSA (by its refusal to accept a retail pharmacy's drug purchase history from Rxeed) is designed to destroy the business operations of retail pharmacies to remove competition for the benefit of its owner CVS Corporation, which also operates a multi-billion-dollar retail pharmacy chain throughout the United States.

58. Caremark's violation of the DSCSA also permits Caremark to unlawfully claw back hundreds of millions of dollars from retail pharmacies under the pretext that their drug purchase history from Plaintiff is unacceptable.

59. Accordingly, Caremark violated the DSCSA and must be enjoined from forcing retail pharmacies not to use Plaintiff Rxeed's online matching service.

## SECOND CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

60. Plaintiff Rxeed re-alleges and incorporates by reference the allegations of paragraphs 1-59 above.

61. Plaintiff has a reasonable expectation of advantage from a prospective contractual or economic relationship with its current and hundreds of other retail pharmacies in New Jersey and throughout the United States.

62. Defendant Caremark interfered with this advantage intentionally and with malice by specifically instructing all pharmacies not to deal or contract with Plaintiff for their specific prescription drug needs.

63. Defendant's malicious interference caused Plaintiff Rxeed serious financial losses of the expected advantages that Plaintiff could have derived from its prospective contractual relationship with other retail pharmacies causing Plaintiff serious economic damage.

## THIRD CAUSE OF ACTION
## NEW JERSEY ANTITRUST ACT
## (N.J. Stat. 56:9-3 and 56:9-10)

64. Plaintiff Rxeed re-alleges and incorporates by reference the allegations of paragraphs 1-63.

65. The relevant pharmacy market for Plaintiff Rxeed is providing retail pharmacies with an online prescription purchasing service. This claim arises under the New Jersey Antitrust Act, N.J. Stat. Ann. §56:9 *et seq*., ("NJ Antitrust Act") and seeks a judgment that Caremark has violated the NJ Antitrust Act.

66. Defendant Caremark's anticompetitive and exclusionary conduct has directly and proximately caused injury to Plaintiff Rxeed's business and retail pharmacy customers as set forth above. This is precisely the type of injury the antitrust laws are intended to prohibit and thus constitutes antitrust injury.

## FOURTH COUNT

### Common Law of the State of New Jersey – Unfair Competition

67. Plaintiff Rxeed re-alleges and incorporates by reference the allegations of paragraphs 1-66.

68. Through Caremark's unlawful, predatory, and anticompetitive acts, Caremark has engaged in unfair competition and unfair trade practices in violation of the common law of the State of New Jersey by leveraging its powers over Plaintiff's retail pharmacy customers to direct them not to transact or do business with Plaintiff Rxeed.

69. Specifically, Defendant Caremark threatened Plaintiff's customers with network termination and devastating claw backs for using Plaintiff Rxeed's online marketplace to purchase needed prescription drugs from other retail pharmacies.

70. Defendant Caremark uses its power as a prescription plans manager of various drug prescription benefit programs (including Medicaid and Medicare) to maliciously direct retail pharmacies away from Plaintiff Rxeed and to CVS's pharmacy stores.

71. Defendant Caremark engaged in a concerted effort to intimidate and coerce retail pharmacies into not doing business with Plaintiff Rxeed to obtain prescription drugs for their patient customers.

72. As a result of the foregoing, Defendant Caremark has injured Plaintiff Rxeed in its business, and Rxeed is entitled to damages, attorneys' fees, costs of suit, and other appropriate relief.

## JURY DEMAND

73. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Rxeed demands a trial by jury as to all issues.

## VI.    RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests judgment enjoining Defendant Caremark from violating the DSCSA by permitting Plaintiff's customers to purchase and sell prescription drug medications from Plaintiff Rxeed's online marketplace. Plaintiff further requests damages in an amount exceeding $2 million dollars which reflects the revenue Plaintiff has lost as of March 22, 2024 because of Defendant Caremark's violation of the DSCA, New Jersey's Antitrust Act, and New Jersey's Unfair Competition laws.   Further, Plaintiff requests attorneys' fees and court costs, and any other relief that court deems just and proper.

Date: April 8, 2024

                                  Respectfully Submitted,

By:    */s/ Nizar DeWood*
        Nizar A. DeWood, Esq.
        4200 Montrose Blvd. Suite 540
        Houston, Texas 77006
        T. (713) 492-2274 | F. (888) 398-8428
        *nizar@dewood-law.com*
        ATTORNEYS FOR PLAINTIFF
        RXEED