UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| RXEED, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>CAREMARK LLC,<br><br>        Defendant. | Case No. 2:24-cv-01111<br><br>Hon. Michael E. Farbiarz<br><br>Motion Day: July 1, 2024<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT CAREMARK LLC'S
REPLY IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................2

I.  Plaintiff's Efforts To Distinguish This Case From The *Matrix* Decision Fail ...................................................................................................2

    A.  Administering A Portion Of The New Jersey Medicaid Program Does Not Render Caremark A "State Actor" For Alleged DSCSA Violations ...............................................................4

    B.  *Brentwood v Tennessee Secondary Sch. Athletic Ass'n* Reinforces This Difference Between Interstate And Intrastate Influence For Purposes Of The State Actor Analysis ..........................6

    C.  *Matrix* Unequivocally Held That The DSCSA Does Not Create A "Federal Right" Enforceable Under Section 1983 ............................8

II. Plaintiff Concedes That Caremark Is Not A "Dispenser," So It Cannot Violate The DSCSA Dispenser Requirements ................................10

III. Simply Alleging Malice Is Insufficient To State A Claim For Intentional Interference................................................................................10

IV. Plaintiff Fails To Address Any of Caremark's Arguments Regarding Its Deficient Antitrust Claim ......................................................11

    A.  Plaintiff Fails To Allege Standing Under The Antitrust Laws ..........11

    B.  Plaintiff Fails To Allege The Necessary Elements To State An Antitrust Claim ..................................................................................12

V.  Plaintiff Concedes Its Unfair Competition Claim Is Duplicative .................13

VI. If The Court Dismisses Plaintiff's Section 1983 Claim, It No Longer Has Jurisdiction Over The Remaining Claims ...............................................14

CONCLUSION.......................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)......................................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................14

*Blessing v. Freestone*,
    520 U.S. 329 (1997)........................................................................................9

*City of Pittsburgh v. W. Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998) .........................................................................12

*Cooper v. Pressler & Pressler, LLP*,
    912 F. Supp. 2d 178 (D.N.J. 2012)...............................................................15

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
    No. CIV.A. 13-6194 JBS, 2014 WL 1767471 (D.N.J. May 1, 2014)................14

*Duffy v. Charles Schwab & Co.*,
    123 F. Supp. 2d 802 (D.N.J. 2000)...............................................................15

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)..................................................................................9, 10

*IDT Corp. v. Bldg. Owners & Managers Ass'n Int'l*,
    No. CIV.A. 03-4113 (JAG), 2005 WL 3447615 (D.N.J. Dec. 15,
    2005) ............................................................................................................13

*Juice Ent., LLC v. Live Nation Ent., Inc.*,
    No. CIV. 11-7318 WHW, 2012 WL 2576284 (D.N.J. July 3, 2012)................15

*Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*,
    34 F.4th 190 (3d Cir. 2022) ...................................................................*passim*

*Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*,
   No. CV1817462KMMAH, 2020 WL 7090688 (D.N.J. Dec. 4,
   2020), *aff'd in part, rev'd in part and remanded*, 34 F.4th 190 (3d
   Cir. 2022) ....................................................................................................8, 9

*Nat'l Collegiate Athletic Ass'n v. Tarkanian*,
   488 U.S. 179 (1988)..............................................................................5, 6, 7, 8

**New Jersey State Cases**

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
   659 A.2d 904 (N.J. App. Div. 1995) ................................................................11

**Federal Statutes**

21 U.S.C.
   § 360eee-1(d)(1)(A)(ii) ....................................................................................10

42 U.S.C.
   § 1983...................................................................................................*passim*

Drug Supply Chain Security Act ....................................................................*passim*

## INTRODUCTION

The Court should dismiss Plaintiff RXEED, LLC's ("Plaintiff") First Amended Complaint ("FAC") against Caremark LLC ("Caremark").

*First*, despite Plaintiff's unavailing efforts to distinguish it, the controlling decision of *Matrix Distributors, Inc. v. National Association of Boards of Pharmacy*, ("*Matrix*") expressly held that alleged violations of the Drug Supply Chain Security Act ("DSCSA") do not support derivative claims under 42 U.S.C. section 1983 against a pharmacy benefits manager ("PBM"). 34 F.4th 190, 196 (3d Cir. 2022). The Court also held that DSCSA does not establish an actionable federal right under section 1983. Based on *Matrix* alone, this Court should dismiss Plaintiff's section 1983 claim with prejudice.

*Second*, Plaintiff's generic allegations that Caremark administers a portion of New Jersey's Medicare and Medicaid programs does not render Caremark a "state actor" on behalf of New Jersey for DSCSA. Plaintiff does not make a single allegation that Caremark's alleged violations of DSCSA were performed on behalf of New Jersey, were done in furtherance of administration of those programs, or were involved with that state at all. Instead, Plaintiff alleges that Caremark's violations of DSCSA arose out of its audits of retail pharmacies across the country, which has nothing to do with any state action on behalf of New Jersey.

*Third*, Plaintiff's Opposition concedes that Caremark is not a "dispenser" subject to the DSCSA dispenser requirements. Because Caremark is not a dispenser, it logically cannot "violate" a provision that only applies to dispensers.

The Court also should dismiss the remaining state law claims because Plaintiff does not respond to any of the case law or arguments in Caremark's Motion. Instead, Plaintiff repeatedly concludes that the cases Caremark cites are "inapposite" or "inapplicable" without one sentence of explanation. (Opp'n at 20, 21 (ECF No. 9).) But as explained herein and in Caremark's Motion, the interference, antitrust, and unfair competition claims are deficient under New Jersey law.

## ARGUMENT

### I. Plaintiff's Efforts To Distinguish This Case From The *Matrix* Decision Fail.

Plaintiff makes three factual distinctions between this case and the Third Circuit's holding in *Matrix* – but none of these purported differences matter.

*First*, Plaintiff argues that *Matrix* concerned pharmaceutical distributor accreditation, but that it is not a "distributor" nor does this case concern accreditation requirements. (Opp'n at 8.) This is a distinction without a difference. In *Matrix*, the Third Circuit affirmed the district court's dismissal of the section 1983 claims because the complaint "contain[ed] no specific allegations connecting any particular

- 2 -

state or states to the challenged action—denial of VAWD accreditation—sufficient to show NABP is operating under color of state law." *Matrix*, 34 F.4th at 196.

In other words, the alleged wrongful conduct (i.e. denying accreditation) did not have any bearing or connection to a particular state action. The same is true here because Plaintiff's FAC fails to detail how Caremark's alleged violation of the transaction history requirements in the DSCSA constitutes action by the State of New Jersey. Plaintiff has not and cannot provide the Court with **any** authority to support its blanket conclusion that Caremark is a state actor for purposes of its DSCSA section 1983 claim because "it is designated by the state of New Jersey and the United State Government to manage New Jersey's Medicaid prescription benefits program." (Opp'n at 11.)

*Second*, Plaintiff mistakenly argues that *Matrix only* concerned alleged due process violations and not alleged DSCSA violations. (Opp'n at 8.) That is false. The plaintiff in *Matrix* alleged DSCSA violations as a basis for 1983 liability *in addition* to constitutional claims. The plaintiffs in *Matrix* contended that the defendants "violated **both** the [federal Drug Supply Chain Security] Act and the Supremacy Clause of the Constitution… [And] [t]he main theme of PriMed and Oak Drugs' complaint is that NABP and OptumRx violated federal law, whether that be the Due Process Clause, the Supremacy Clause, ***or the Drug Supply Chain Security***

- 3 -

*Act*." *Matrix*, 34 F.4th at 195 (emphasis added). Thus, Plaintiff's distinction is incorrect.

*Third*, Plaintiff confusingly argues that *Matrix* concerned an "indirect" injury claim whereas Caremark allegedly committed a "direct violation of the DSCSA dispenser exception." (Opp'n at 8.) It is unclear what Plaintiff means by this statement, nor has it provided any case law outlining the impact and difference between alleged "direct" or "indirect" DSCSA violations. Plaintiff also does not explain why this "distinction" would have any impact on the state actor analysis. But even so, Plaintiff concedes that Caremark is not a "dispenser" subject to the DSCSA dispenser requirements (as explained below) so Plaintiff's alleged injury here would also necessarily be "indirect."

In short, none of the distinctions noted in Plaintiff's Opposition affect *Matrix's* dispositive impact.

### A. Administering A Portion Of The New Jersey Medicaid Program Does Not Render Caremark A "State Actor" For Alleged DSCSA Violations.

Without citing to any authority in support, Plaintiff summarily concludes that Caremark is a state actor because it manages New Jersey's Medicaid program.[1] But

---

[1] Plaintiff repeatedly notes how Caremark does not deny its role with New Jersey Medicaid. But that is immaterial. Caremark does not concede *any* facts in the FAC and only assumes them to be true for purposes of the Motion. Even under the lenient motion to dismiss standard, Plaintiff cannot state a claim here.

- 4 -

Plaintiff fails to allege any facts connecting that conduct to the alleged DSCSA violations. In addition, Caremark administers other states' programs – so it cannot be said to be a surrogate for one state when it allegedly violated DSCSA by requiring its network pharmacies (both in and outside of New Jersey) to comply with the DSCSA transaction history requirements.

In *Matrix*, the Third Circuit held that the alleged DSCSA violations did not constitute state action because the defendant could not have said to be acting under "color of state law," and cited to the *Tarkanian* decision. *Matrix* 34 F.4th at 196. In *Tarkanian,* the court explained that the NCAA enforced its policies with input from multiple states. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988). Therefore, when enforcing those policies it was not acting as a surrogate of a single state *i.e.* under "color of Nevada law." *Id*. The court further explained that "in the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and ***the question is whether the State was sufficiently involved to treat that decisive conduct as state action***." *Id*. (emphasis added).

The Court here must reach the same conclusion as the courts in *Matrix* and *Tarkanian*. Here, Plaintiff alleges that Caremark's alleged wrongful conduct reaches nationwide. (FAC, ¶¶ 5, 6, 45.) Moreover, the FAC does not point to a specific client

in New Jersey that Plaintiff could not serve as a result of the alleged wrongful conduct, allege any specific facts related to its operations in New Jersey, or allege what specific action by New Jersey granted Caremark state authority to act on its behalf. (*Id.*, ¶¶ 17, 45.)

As such, the FAC fails to allege how the conduct at issue here should be considered a "surrogate" of a single state for purposes of the "state actor" analysis, or how New Jersey delegated any authority to Caremark such that a sufficiently close nexus exists. Instead, like in *Tarkanian*, and *Matrix*, Plaintiff's FAC should be dismissed because "[s]uch connection between a state and a private entity is difficult to show, particularly when it hinges on the state's membership in a larger nationwide organization." *Matrix*, 34 F.4th at 195.

### B. *Brentwood Academy v. Tennessee Secondary School Athletic Association* Reinforces This Difference Between Interstate And Intrastate Influence For Purposes Of The State Actor Analysis.

Plaintiff relies on the holding in *Brentwood Academy v. Tennessee Secondary School Athletic Association* to support its claim, but that case concerned delegation of state authority to an *intrastate* organization not a national one.

Plaintiff argues that Caremark is a state actor because it is intertwined with the state of New Jersey like the defendant in *Brentwood* was intertwined with the state of Tennessee. (Opp'n at 12–13.) But that is a misleading and cursory explanation which does not accurately explain the facts or holding of that case.

- 6 -

*Brentwood* concerned a defendant that was entirely an ***intrastate*** association. 531 U.S. 288, 297–98 (2001). The Tennessee State Board of Education, through state statutory authority, designated the defendant association to supervise and regulate school athletic activities within its state. *Id*.

The court found that the defendant was a state actor because it only oversaw schools in Tennessee and did so with authority from the Tennessee government granted from state statutory authority. *Id*. The court distinguished that holding from *Tarkanian*, explaining that there was no state action in *Tarkanian* because that case concerned a ***nationwide*** membership organization. *Id*. The court did, however, leave open the possibility for state action when an association concerned only intrastate actors like the one at issue in Tennessee. *Id*., at 298, ("*Tarkanian* pointed to a contrary result on facts like ours, with an organization whose member public schools are all within a single State. The situation would, of course, be different if the [Association's] membership consisted entirely of institutions located within the same State, many of them public institutions created by the same sovereign."). Notably, the difference was the NCAA's policies at issue in *Tarkanian* "were shaped not by the University of Nevada alone, but by several hundred member institutions, most of them having no connection with Nevada, and exhibiting no color of Nevada law." *Id*.

Here, the FAC does not contain any allegations tying Caremark's alleged DSCSA violations solely to the state of New Jersey. Nor does it tie the wrongful conduct to authority granted through New Jersey state law. On the contrary, Plaintiff alleges nationwide conduct and cherry picks the state of New Jersey to bring this complaint. (FAC ¶¶ 4, 21, 45.) Caremark cited to this portion of the *Brentwood* opinion in its Motion to explain this critical difference. (Mot. at 6, citing to *Matrix* and *Brentwood* (ECF No. 5-1).) Indeed, *Brentwood* supports Caremark's request for dismissal.

### C. *Matrix* Unequivocally Held That The DSCSA Does Not Create A "Federal Right" Enforceable Under Section 1983.

As explained in Caremark's Opening Brief, a claim under section 1983 not only must be brought against a "state actor" but it also must seek enforcement of a "federal right." (Mot. at 8–11, citing to *Blessing v. Freestone,* 520 U.S. 329, 340–41, (1997).) In *Matrix*, the Third Circuit affirmed the district court's decision which held that "the DSCSA cannot support a § 1983 claim" because the DSCSA does not create a federal right. *Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*, No. CV1817462KMMAH, 2020 WL 7090688, at *13 (D.N.J. Dec. 4, 2020), *aff'd in part, rev'd in part and remanded*, 34 F.4th 190 (3d Cir. 2022). Plaintiff fails to offer any meaningful argument as to why this binding precedent should not apply here.

Plaintiff then incorrectly applies the three-factor analysis laid out in *Gonzaga University v. Doe,* 536 U.S. 273, 283 (2002). First, Plaintiff argues (without any supporting authority) that congress "must" have intended to benefit it when it created the DSCSA. (Opp'n at 16.) This bold statement absent legal support is unpersuasive. Instead, the district court explained that the DSCSA "lacks any such language" creating an "unmistakable focus" on a benefitted class such as Plaintiff. *Matrix*, No. 2020 WL 7090688, at *13. The court further explained that "the DSCSA statute's purpose is to protect and regulate the drug supply chain" and that it does not create a federal right to protect incidental beneficiaries. *Id.* So even if Plaintiff may be incidentally benefited by the DSCSA (it is not), that is insufficient to create a federal right and to state a claim under section 1983.

As to the second and third *Gonzaga* factors, Plaintiff once again fails to provide any support for its argument. As explained in the Motion, the DSCSA does not exist to protect Plaintiff, so there is no appropriate standard for the Court to apply when analyzing such claims. (Mot. at 11.) Confusingly, Plaintiff states that the DSCSA imposes an "express and mandatory obligation on the state of New Jersey." (Opp'n at 18.) But that language does not appear in the statute, nor does Plaintiff provide the Court with any citation to support this critical and incorrect conclusion. The relevant language of the DSCSA creates obligations on dispensers, not states.

*See* 21 U.S.C. 360eee-1(d)(1)(A)(ii) (expressly outlining obligations on "dispensers".)

## II. Plaintiff Concedes That Caremark Is Not A "Dispenser," So It Cannot Violate The DSCSA Dispenser Requirements.

Plaintiff repeatedly alleges that Caremark violated 21 U.S.C. § 360eee-1(d)(1)(A)(ii). But, as explained in Caremark's Motion, this section of the DSCSA only creates a requirement on dispensers. (Mot. 12–13.) Plaintiff admits in Opposition that "**Plaintiff does not allege that Caremark is a 'Dispenser.'**" (Opp'n at 18.) Thus, DSCSA does not create any obligations on Caremark.

Plaintiff's arguments on this issue in its Opposition are nonsensical. Without quoting any language from the code or any supporting case law, Plaintiff concludes that section 360eee-1(d)(1)(A)(ii) "does create a requirement and obligation upon Caremark to comply with the dispenser exception." (Opp'n at 19.) But again, this section requires that a "dispenser" provide certain transaction histories, so Plaintiff's argument requires reading additional language into the statute that does not exist.

## III. Simply Alleging Malice Is Insufficient To State A Claim For Intentional Interference.

As explained in Caremark's Motion, New Jersey law requires that when bringing a claim for interference against a competitor, the plaintiff must allege improper conduct that is "fraudulent, dishonest, or illegal." *Ideal Dairy Farms, Inc.*

*v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 936 (N.J. App. Div. 1995). The FAC is void of these necessary allegations.

In response, Plaintiff argues that Caremark acted with "malice" when it allegedly violated the DSCSA. But simply alleging "malice" is insufficient to meet this standard. *Id*. Moreover, because Plaintiff concedes that Caremark is not a dispenser subject to DSCSA requirements, it has not alleged that Caremark engaged in any "fraudulent, dishonest, or illegal" conduct and this Court should dismiss this cause of action.

### IV. Plaintiff Fails To Address Any of Caremark's Arguments Regarding Its Deficient Antitrust Claim.

In its Motion, Caremark explains in depth how Plaintiff's FAC not only fails to plead the necessary elements for an antitrust claim, but also fails to establish that Plaintiff has antitrust standing. The Opposition responds with a single paragraph that only addresses the standing issue, and simply recites the elements for an antitrust claim without providing any authority or analysis as to why Plaintiff satisfies those elements here.

#### A. Plaintiff Fails To Allege Standing Under The Antitrust Laws.

Plaintiff does not address any of the case law cited in Caremark's motion and its bare conclusory statements do not avoid binding Supreme Court precedent.

The Supreme Court explains that "the antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344 (1990); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 266 (3d Cir. 1998) (finding no injury or standing because plaintiff failed to allege "marketplace" injury). In other words, Plaintiff cannot simply allege individual injury to state an antitrust claim.

But that is all Plaintiff alleges in the FAC. (FAC ¶¶ 48, 66 (ECF No. 4).) Plaintiff only argues that Caremark possesses a specious "incentive" that it concludes results in "negative market competition." (Opp'n at 20.) Plaintiff does not provide any authority to support its position that these conclusory allegations are sufficient to establish standing.

### B. Plaintiff Fails To Allege The Necessary Elements To State An Antitrust Claim.

Instead of addressing the elements of an antitrust claim, Plaintiff only recites the elements without any substantive application, which is insufficient.

*First*, Plaintiff fails to allege any explicit agreement or conspiracy by Caremark and other actors as required to state a claim. Instead, Plaintiff reiterates an alleged nebulous incentive, but does not provide any case law holding that an incentive is sufficient to constitute concerted action. On the contrary, the case law

explains that "concerted activity" is necessary. *IDT Corp. v. Bldg. Owners & Managers Ass'n Int'l*, No. CIV.A. 03-4113 (JAG), 2005 WL 3447615, at *7 (D.N.J. Dec. 15, 2005).

*Second*, as explained above, Plaintiff has not alleged facts (other than bare conclusory ones) that Caremark's actions have resulted in negative market competition or that Caremark and Plaintiff are market competitors. Plaintiff's conclusory allegations are insufficient to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (holding that a pleading "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

*Third*, because Caremark is not subject to the dispenser requirements in the DSCSA, the FAC fails to allege that Caremark engaged in any illegal conduct.

## V. Plaintiff Concedes Its Unfair Competition Claim Is Duplicative.

Plaintiff does not dispute that the facts pled in support of its unfair competition claim are identical to those for its other causes of action. (Opp'n at 21–22.) Thus, under New Jersey law, the Court should dismiss this claim as duplicative.

Plaintiff does not explain or support its statement in Opposition that the cases in Caremark's Motion are "inapposite." (Opp'n at 21.) Caremark cites to numerous cases in New Jersey that explain how unfair competition claims need independent factual underpinnings. (Mot. at 19–20.) Those cases present identical fact patterns to the one here where there are no independent facts that support the unfair

- 13 -

competition claim. *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. CIV.A. 13-6194 JBS, 2014 WL 1767471, at *7 (D.N.J. May 1, 2014) (dismissing the unfair competition claim as duplicative); *see also Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (same).

Plaintiff then argues that unfair competition is a distinct cause of action, but that is a red herring. Unfair competition can be a stand-alone cause of action (that is not the issue), but when it has no independent factual basis separating it from the other alleged torts it should be dismissed. *Juice Ent., LLC v. Live Nation Ent., Inc.*, No. CIV. 11-7318 WHW, 2012 WL 2576284, at *5 (D.N.J. July 3, 2012).

**VI. If The Court Dismisses Plaintiff's Section 1983 Claim, It No Longer Has Jurisdiction Over The Remaining Claims.**

Plaintiff does not offer any reason or authority for the Court to retain jurisdiction if it dismisses the only pending federal claim. (Opp'n at 22.) As such, because Plaintiff does not have standing under section 1983, the court should dismiss the remaining state law claims as well. *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 189 (D.N.J. 2012) (dismissing state law claims after federal claims were dismissed and case had just begun).

## **CONCLUSION**

Because Plaintiff has not properly pled any of the causes of action in its FAC, the Court should dismiss the FAC in its entirety.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: June 24, 2024 | **NIXON PEABODY LLP** |

*/s/ Eric M. Ferrante*
Eric M. Ferrante (NJ Bar No. 140542014)

1300 Clinton Square
Rochester, NY 14604
Tel.: (585) 263-1000
eferrante@nixonpeabody.com

Kevin P. Shea
(*pro hac vice* )
Elizabeth Z. Meraz
(*pro hac vice*)
70 West Madison Street, Suite 5200
Chicago, Illinois 60602
Telephone: (312) 977-4400
kpshea@nixonpeabody.com
ezmeraz@nixonpeabody.com

*Attorneys for Defendant Caremark LLC*

- 15 -

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **Reply in Support of Defendant's Motion to Dismiss** was filed electronically on June 24, 2024, in compliance with the Court's Local Rules and served on all counsel who have consented to electronic service.

*/s/ Eric M. Ferrante*
Eric M. Ferrante
