UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RXEED LLC,<br><br>      *Plaintiff*,<br><br>v.<br><br>CAREMARK LLC,<br><br>      *Defendant*. | No. 24-cv-01111 (MEF)(AME)<br><br>**OPINION and ORDER** |

\* \* \*

On this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the first question is whether the Plaintiff has stated a federal claim against the Defendant.

The Court concludes that it has not, and the federal claim must therefore be dismissed.

That leaves three state-law claims. See First Amended Complaint ("Complaint") ¶¶ 60-72. As to each, only the Court's supplemental jurisdiction is invoked. See id. ¶ 1 (citing 28 U.S.C. § 1367).

The Court concludes that in light of the dismissal of the federal claim, the Court will not maintain jurisdiction over the state-law claims.

\* \* \*

In sum: the Defendant's motion to dismiss is granted in its entirety.

\* \* \*

The Plaintiff owns an online marketplace that helps retail pharmacies across the country buy and sell drugs. See Complaint ¶¶ 3, 17.[1]

---

[1] Because this is a motion to dismiss, the Court must treat all

1

The Defendant is a pharmacy benefits manager. See id. ¶ 4. It processes claims for reimbursement submitted by retail pharmacies on behalf of their customers. See id. ¶ 21.

The State of New Jersey runs a Medicaid program and has designated the Defendant as its benefits manager.[2] See id. ¶¶ 5, 34, 54. In that role, the Defendant processes claims for New Jersey pharmacies. See ¶¶ 4, 21.

As it goes about its work, the Defendant applies certain claims-processing requirements.

One of these: a pharmacy's claim for reimbursement as to a particular drug must include the drug's purchase history; that shows how the pharmacy got the drug before providing it to a customer. See id. ¶¶ 22, 35.

How does a retail pharmacy figure out a drug's purchase history?

It looks to the Plaintiff. The Plaintiff gets drug-purchase histories to pharmacies. See id. ¶ 37. And then the pharmacies use those histories --- bundling them up along with other information, and then, based on the full package, seeking reimbursements through the Defendant for outlays they have made to pharmacy customers. See id. ¶¶ 16-17, 38.

\* \* \*

The Plaintiff has now sued the Defendant, seeking an injunction and damages. See id. at 14.

The gist of the lawsuit: the Plaintiff prepares its drug-purchase histories for pharmacies --- but when pharmacies use those histories to seek reimbursement from the Defendant, the Defendant says no. See id. ¶ 38. As a result, it is alleged, some pharmacies have stopped doing business with the Plaintiff. See id. ¶¶ 25-26, 45.

All of this, it is said, violates federal law --- in particular,

---

the allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Whether they are in fact true would be a question for later in the case.

[2] The Complaint suggests, but does not say, that the Defendant is the only benefits manager for New Jersey's Medicaid program. See Complaint ¶¶ 34, 54.

2

the Federal Drug Supply Chain Security Act, 21 U.S.C. § 360eee-1(d)(1)(A)(ii).  See id. ¶¶ 5, 38.

\*     \*     \*

To begin the analysis, note that a plaintiff can generally get a lawsuit off the ground only if it can bring to bear two things --- a relevant substantive body of law, and also a cause of action.

Here, as noted, the Plaintiff points to the Federal Drug Supply Chain Security Act as providing the substantive law that is said to be in play.  See id.

And the Plaintiff has chosen 42 U.S.C. § 1983 as its cause of action.  See id. ¶ 54.

That cause of action, § 1983, provides a remedy for violations of federal law --- but only against those who act on behalf of a state.  See Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy, 34 F.4th 190, 195 (3d Cir. 2022); see generally Hernandez v. Twp. of Lyndhurst, 2025 WL 456950, at \*5-6 (D.N.J. Feb. 10, 2025).

Is the Defendant here a "state actor"?  If yes, the Plaintiff's § 1983 claim may be viable.  If no, the § 1983 claim does not work and it must therefore be dismissed.

\*     \*     \*

In many contexts, spotting a state actor is straightforward.  An on-duty police officer doing police work --- he or she is a state actor.  See Matrix, 34 F.4th at 195.  Or think of a public community college or a town government.  Those are state actors, too.  See id.; Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978).

Private entities can also be state actors under § 1983.  See Matrix, 34 F.4th at 195.  But when it comes to these, it can be difficult to say whether their conduct can count as state action.

In this case, the Plaintiff's core argument for why the Defendant (a private entity) is a state actor is a business relationship --- the contract the Defendant presumably has with New Jersey, under which it serves as the state's Medicaid program.

3

But the existence of a contract, standing alone, is not enough to check the state-actor box.

The Supreme Court "has long held" that the mere "fact that the government . . . contracts with . . . a private entity does not convert the private entity into a state actor." Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 814 (2019) (collecting cases).

Rather, a plaintiff "must show such a tight connection between a state and the challenged action that the state could be held responsible for that action." Matrix, 34 F.4th at 195.

Emphasis on "the challenged action." "[T]he relevant question is not whether the private actor and the state have a close relationship generally, but whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Borrell v. Bloomsburg Univ., 870 F.3d 154, 160 (3d Cir. 2017) (cleaned up) (emphasis in original).[3]

\*   \*   \*

Ascribing a private entity's challenged action to a state can be especially hard to do when the private entity serves multiple states.  See Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488

---

[3] The Third Circuit has outlined three broad tests to determine whether a private entity is a state actor. See Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). These are: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Id. (cleaned up). The Plaintiff does not cite Kach but essentially relies only on the third test. Compare id. at 648 with Opposition Brief at 12-14.  That may be because the Plaintiff does not think the first and second tests are relevant here.  Or perhaps it thinks that the third test overlaps with and subsumes the key question that knits together all of the tests: "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Kach, 589 F.3d at 646 (cleaned up); compare id. (general test) and Borrell, 870 F.3d at 160 (same), with Kach, 589 F.3d at 648 (third test).

4

U.S. 179, 193 (1988). Such set-ups reduce the odds that any one state has an outsized impact on (or role in) at the private entity --- such that it can be said that that state in particular has a "close nexus," Borrell, 870 F.3d at 160, with a challenged action and therefore can potentially be responsible for it under § 1983.

This contrasts with private entities that are dominated by "public institutions created by the same sovereign." Tarkanian, 488 U.S. at 193 n.13 (emphasis added).

To see the difference between multi-state and single-state private entities, compare the Supreme Court's decision in Tarkanian with its decision in Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 298 (2001).

In Tarkanian, the petitioner was a nationwide sports association. It told one of its constituent schools to suspend a coach or suffer penalties. See id. at 181, 198.

The school was a state actor. See id. at 192. And it had helped to promulgate the association's rules --- the same rules under which the coach was to be suspended. See id. at 193.

But the Supreme Court held that the association was not itself a state actor under § 1983. One reason why: its rules were shaped not just by the state-actor school but also by hundreds of other schools from across the country --- some public, others private. See id. at 193-94.

This diffusion was part of what made it hard for the Supreme Court to conclude that one particular school's state-actor status rubbed off on the association as a whole. See id. at 193 (the state-actor university "had some impact on the [association's] policy determinations" at issue --- but that was not enough, in part because other universities "each similarly affected those policies").

But the picture can be different when a private entity is "all within a single State." Brentwood Acad., 531 U.S. at 298; see also Tarkanian, 488 U.S. 179, 194 n.13 (dicta); Matrix, 34 F.4th at 196. In a single-state organization, there is no dilution and it is therefore more plausible to infer that there is a "close nexus," Borrell, 870 F.3d at 160, between the involved state and the private entity.

In Brentwood Academy, for example, a high-school athletic association sought to enforce a rule against undue influence in

5

the recruitment of student athletes.  See 531 U.S. at 293.

The Supreme Court noted that the association was "entwined," id. at 302, with the State of Tennessee: at the time in question, the people "adopt[ing] and enforc[ing] the rules" for the association were all public-school officials.  See id. at 299.  The association was therefore a state actor.  See id. at 304-05.  There was "a direct connection between Tennessee and the athletic association's policies."  Matrix, 34 F.4th at 196.

\*   \*   \*

Here, the Plaintiff does not meaningfully try to ascribe the Defendant's conduct to the State of New Jersey.  It only alleges that the Defendant is New Jersey's Medicaid benefits manager.  See Complaint ¶ 54; Opposition Brief at 13-14.

The Complaint "contains no specific allegations connecting any . . . state . . . to 'the challenged action'" --- that is, to the Defendant's refusal to accept the Plaintiff's drug-purchase histories.  See Matrix, 34 F.4th at 196 (cleaned up); Complaint ¶ 57.

The Complaint does not lean on the sorts of allegations that might at least point in the direction of state action.  It does not, for example, allege that New Jersey coerced the Defendant into taking the challenged action.  Cf. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (collecting cases).  Or that New Jersey significantly encouraged the challenged action.  See id.; see generally Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963).  Or that New Jersey conspired with the Defendant to harm the Plaintiff.  Cf. Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); see also Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995).

And if anything, the Complaint strongly suggests that the Defendant acted not at New Jersey's behest but to help its parent company, CVS Corporation.  Per the Plaintiff, the Defendant worked to shield CVS from competing retail pharmacies.  See id. ¶¶ 27-30, 40, 50-51, 57, 70.[4]  If New Jersey was "tight[ly] connect[ed]," Matrix, 34 F.4th at 195, to this effort in some way --- the Plaintiff does not say how or why.

Even taken in the light most favorable to the Plaintiff, the

---

[4]  On four occasions the Complaint alleges that stifling competition is the Defendant's key "incentive."  Id. ¶¶ 27-28, 40, 50.

6

Complaint's "allegations suggest [the Defendant] w[as] pursuing [its] own private motives." Showalter v. Brubaker, 283 F. App'x 33, 35 (3d Cir. 2008). That is not state action. See id.

\* \* \*

And it bears noting: even with further allegations, the Plaintiff might have had an uphill climb to establishing state action here.

That is partly because the Defendant is more like the nationwide association in Tarkanian (not a state actor) and less like the single-state association in Brentwood Academy (a state actor).

After all, the Complaint alleges that the policy cost the Plaintiff business "in New Jersey and other states," Complaint ¶ 45, and affected "[a]lmost every retail pharmacy" in the Plaintiff's national network. Id. ¶ 49. None of this obviously suggests that it was New Jersey's hand at work.

And if anything, this case is even further removed from state action than Tarkanian. There, the state-actor school had a role in shaping the sports association's policies; it took part in promulgating the association's rules. See Tarkanian, 488 U.S. at 193. Here, by contrast, the Plaintiff has not alleged that New Jersey had any role, even as one voice among many, in crafting the Defendant's approach to accepting or rejecting certain drug-purchase histories.

\* \* \*

In short: on the Plaintiff's allegations, the Defendant, a private entity, does not count as a state actor for § 1983 purposes.

\* \* \*

An opinion by the Sixth Circuit supports this holding. In Snodgrass-King Pediatric Dental Associates, P.C. v. DentaQuest USA Insurance Co., 780 F. App'x 197 (6th Cir. 2019), a dentist sued the benefits manager for the State of Tennessee's Medicaid program under § 1983. The defendant-manager had allegedly excluded the plaintiff-dentist from the state's Medicaid network in retaliation for First Amendment activity. See id. at 202-03.

At trial, a jury found that the defendant was a state actor. See id. at 205-06. But the judge vacated the verdict, holding the jury's finding unsupported by the evidence. See id. at 203-

7

04 (citing Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., 295 F. Supp. 3d 843 (M.D. Tenn. 2018)). The Sixth Circuit affirmed. See id. at 207.

The evidence of state action in Snodgrass-King was more robust than the allegations here. Emails showed that Tennessee's "position" and "preference" were to exclude the plaintiff from the defendant's network of providers. See id. at 205. Still, the court of appeals held this did not show state action, since the state played no role in "the actual decision-making process to exclude" the plaintiff and had left the choice to the defendant. See id.; accord, e.g., Blum, 457 U.S. at 1004-05 ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.").

The Plaintiff here tries to do more with less. In asking this Court to find state action, it has not alleged that New Jersey encouraged or even knew about "the challenged action," let alone that there was "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Borrell, 870 F.3d at 160.

\*   \*   \*

Boiled down, the Plaintiff's argument here amounts to little more than this: the Defendant manages New Jersey's Medicaid program and was therefore a state actor when it rejected the Plaintiff's drug-purchase histories. See Opposition Brief at 11-13. But that is not enough, even at the Rule 12(b)(6) stage.

The Plaintiff has not plausibly alleged that the Defendant is a state actor. Therefore, it has not stated a claim under § 1983 and the Court must dismiss its claim under the Federal Drug Supply Chain Security Act.[5]

\*   \*   \*

---

[5] The Plaintiff also alleges that the Defendant is a state actor "because it is designated by the State of New Jersey and the United States to . . . manage Part D of the Federal Medicare Program." Complaint ¶ 54. But the Plaintiff does not explain how a private entity's role in managing a federal program can count as the action of a state under § 1983, especially when the private entity was "designated" to its federal role by the federal government.

In light of the above, the Court will also dismiss the three state-law claims for which the Plaintiff asserts only supplemental jurisdiction.

"[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). No party has raised anything along those lines here.[6]

And the nature of the state-law claims favors dismissal. At their core, these claims focus on issues of New Jersey competition law, a complex field rife with the sort of "public policy concerns," K.P. v. Corsey, 77 F. App'x 611, 612-14 (3d Cir. 2003), that are best taken up by the state's own courts, not this one. See also, e.g., Pinkston v. City of Jersey City, 699 F. Supp. 3d 298, 305 (D.N.J. 2023).

\*   \*   \*

Accordingly, the motion to dismiss is granted.

IT IS on this 20th day of March, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[6] If anything, the opposite --- the Defendant asks the Court to dismiss the state-law counts if it dismisses the federal one, see Motion to Dismiss at 21, and the Plaintiff does not object. See Opposition Brief at 22.